# Exhibit 6

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FAMILY DIVISION

CASE NO. 2019-011955-FC-04

IN RE: THE MARRIAGE OF:

OLYMPIA ALENCAR DE CASTRO,

    *Petitioner/Wife*

and

GUSTAVO ADOLFO HERNANDEZ FRIERI,

    *Respondent/Husband.*

_____/

## MARITAL SETTLEMENT AGREEMENT AND PARENTING PLAN

This document is a Marital Settlement Agreement and Parenting Plan (hereinafter referred to as "Agreement"), which has been entered into this 24 day of January 2020, between, OLYMPIA ALENCAR DE CASTRO, (hereinafter referred to as "Mother" or "Wife"), a resident of the State of Florida, and GUSTAVO ADOLFO HERNANDEZ FRIERI, (hereinafter referred to as "Father" or "Husband"), a resident of the State of Florida.

**WHEREAS**, the parties to this Agreement, in Miami-Dade County, Coral Gables, Florida; and

**WHEREAS**, there have arisen irreconcilable issues between the parties; and,

**WHEREAS**, in consequence of these issues, the parties have agreed to live separately and apart during the rest of their lives; and,

1

**WHEREAS**, the parties desire to provide for a resolution of all issues regarding parental responsibility and residential care of their minor Children, to wit: GHDC, age 8, FDHC, age 6; AHDC, age 4, (hereinafter referred to as "Children"); and,

**WHEREAS**, the parties have prepared and exchanged Financial Affidavits indicating their respective assets and liabilities, both joint and individual, as well as each of their respective incomes and occupations; the parties have made available financial documentation to each other; and, the parties stipulate that each has made a full and accurate financial disclosure to the other in their respective Financial Affidavits and in this Agreement; and,

**WHEREAS**, it is the specific date and intention of these parties that their relations with respect to all their property, their financial matters and all other matters that would relate thereto, be finally fixed by this Agreement in order to settle and determine in all respects and for all purposes their respective present and future property and financial rights, equitable distribution rights, support, alimony and any and all other claims and demands in such a manner that any action with respect to the rights and obligations, past, present, and future of either of these parties with respect to the other be fully, finally, and conclusively settled, and determined by this Agreement; and

**WHEREAS**, it is the specific desire and intention of the parties that all matters and issues relating to the parental responsibility and support for their minor Children be fixed by this Agreement in order to settle and determine their rights, claims and demands.

**NOW, THEREFORE**, for and in consideration of the mutual promises, covenants, undertakings, guarantees, indemnifications, and all other provisions which will be more fully set forth hereinafter, and for other good and valuable consideration, the parties agree as follows:

2

1. **RECITALS**

   The above ("WHEREAS" clauses) are hereby incorporated as a part of this Agreement and accepted and agreed to by both parties as though fully set forth in the body of this Agreement. The fact that a particular provision of the body of this Agreement is not mentioned in the recitals shall not affect the validity or enforceability of such provision. The facts stated in the recitals shall be conclusively presumed to be true for all purposes between the parties.

2. **SEPARATION**

   Except as specifically set forth herein, the parties shall have the right to live separate and apart from each other. Each party shall be free from the control and authority of the other. Neither party shall harass the other nor interfere with the others private, social or business activities. Each party may engage in any business or employment for his or her separate benefit. Neither party shall enter the home or business of the other without express prior permission. Even if given express prior permission to enter the other's home or business, each party will leave the home or business of the other immediately upon request.

3. **MUTUAL RELEASE**

**3.1.** Except as otherwise expressly provided in this Agreement, the parties release each other from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, intentional torts, negligence claims, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said either party ever had, now has, or which any personal representative, successor, heir or assign of said either party, hereafter can, shall or may have, against the other, for,

upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents.

3.2. The parties agree to release and do hereby release any and all right, title, interest or claims they may have to or upon the property or estate of the other whether real or personal and whether now owned or hereafter acquired. Each party shall have the free and unrestricted right to dispose of his or her individual property from any claim or demand by the other party and his or her estate shall belong to the person or persons who become entitled by will or devise, bequest, intestacy, administration, beneficiary to insurance or annuity, or otherwise. If one of the parties dies during the lifetime of the other party and without limiting the foregoing, each party expressly waives, surrenders and relinquishes any and all right of election to take any share of the estate of the other party under will and in intestacy, including but not limited to, any and all dower, curtesy, elective share, homestead, or other present or future rights and interests in any real or personal property of which either party may die seized or possessed, and each party any further surrenders and renounces any right of administration to the estate of the other party and shall execute any and all documents, including but not limited to, a disclaimer, to effectuate this provision.

3.3. Except as may be specifically set forth in this Agreement, each party hereby relinquishes any rights he or she may have to any insurance policies owned by the other in which he or she was designated as beneficiary prior to this Agreement. In the event a party dies after the execution of this Agreement leaving an insurance policy which establishes the other party as a beneficiary of that insurance and the beneficiary designation was made prior to this Agreement, the beneficiary of the insurance shall be deemed to be the estate of the deceased party.

4

4. **ADDITIONAL INSTRUMENTS**

The parties shall hereafter, upon the request of the other, execute and deliver such bills of sale, deeds, releases, waivers, and other instruments, papers, or documents as either party may reasonably require for the purpose of giving full effect and compliance with all of the provisions of this Agreement, and affecting any real or personal property set forth herein. In the event that either party shall fail or refuse to execute any such instrument, paper, or document, then it is the understanding of the parties that an order of any court of competent jurisdiction shall, and will operate as, and instead of the instrument, paper or document for the conveyance of said real or personal property set forth herein. The party requesting a document to be executed shall be charged with the responsibility for preparing and delivering the document to the other for execution.

5. **MODIFICATION AND WAIVER**

No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and unless said subsequent instrument is executed with the same formality as this Agreement. The failure of either party to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of the right of the party thereafter to insist upon the performance of that, or any other provision of this Agreement, at any time whatsoever. Nothing herein shall limit the parties' ability to request a modification of the terms of this Agreement dealing with parental responsibility, visitation and child support matters pursuant to the laws of the State of Florida.

6. **ENTIRE UNDERSTANDING**

The parties have incorporated in this Agreement their entire understanding of all matters relating to all issues contained herein. No oral statement or prior written matter extrinsic to this

Agreement concerning the rights, duties, or obligations of either party hereto, or to the other, shall have any force or effect on any party. The parties are not relying on, and have not relied upon, and specifically herein repudiate any past or present representations other than those expressly set forth herein. Any prior agreements, statements, promises or representations between the parties, whether written or oral, are hereby revoked and held void and unenforceable.

## 7. GOVERNING LAW AND PARTIAL INVADILITY

This Agreement shall be strictly construed and governed in accordance with the laws of the State of Florida, and, if any provision of this Agreement is held to be invalid, void, voidable or, for some other reason unenforceable, then, in that event, all of the other remaining provisions of this Agreement shall nevertheless continue to be binding and in full force and effect on the parties hereto.

## 8. LEGAL AND ACCOUNTING ADVICE

**8.1.** The Wife has been represented by Amy Steele Donner, Esquire, Nelson Mullins Broad and Cassel, 2 South Biscayne Blvd, 21st Floor, Miami, FL 33131, in the negotiation of this Agreement. The Wife acknowledges that she is fully satisfied with the professional services which have been rendered on her behalf and that she had ample opportunity before executing this Agreement to have any questions answered. The Husband has represented himself Pro Se. The Husband understands he was entitled to retain an attorney to represent him but has chosen not to hire counsel and does so voluntarily.

**8.2.** Each of the parties to this Agreement has provided the other with their respective financial affidavits. Both parties acknowledge that throughout the litigation of their case, they have been given full and complete access to all requested financial records, business records and financial

information relating to the assets and liabilities, income and expenses of the other. Each party acknowledges that he and she are satisfied that the financial documentation he and she have received constitutes sufficient financial disclosure to enable the parties to enter into this Agreement. As such, the parties have directed their respective attorneys not to conduct any further financial or other discovery in this case or obtain any further records, documents or financial affidavits from the other party. Each party hereby waives any additional financial disclosure from the other.

**8.3.** Both parties acknowledge that they retained, (or had the opportunity to retain but chose not to do so) their own forensic certified public accountant to ask any questions either may have with reference to valuation of assets and the financial and tax implications of this Agreement. The Wife acknowledges that she has not relied upon any financial or tax advice that may or may not have been given by her attorney in negotiating this Agreement.

**8.4.** Each party acknowledges that they have been informed of the law of Florida concerning the power of the Courts, under certain conditions, to modify the terms of this Agreement dealing with certain child related matters including parental responsibility, time-sharing and child support.

## 9. **VOLUNTARY EXECUTION**

The parties to this Agreement declare that they have read, in detail, and have understood the provisions set forth in this Agreement and the parties have done so after retaining independent legal counsel to advise them with regard to the provisions of this Agreement. The parties further represent that after having read and understood all of the terms, conditions, and obligations, set forth in this Agreement, that they believe this Agreement to be fair, just, and reasonable. Each has signed, executed and entered into this Agreement freely and voluntarily without any undue

influence, fraud, coercion, threats and/or intimidation by either party or their counsel. Each party fully intends to be bound by all of the terms, conditions and obligations set forth in this Agreement.

## 10. COUNTERPART SIGNATURE

This Agreement may be signed in one or more counterparts, each of which, when executed with the same formality and in the same manner as the original, shall constitute an original.

## 11. PARENTAL RESPONSIBILITY

### 11.1. RECITAL AND RESOLUTION OF CONFLICTS.

**11.1.1.** Each parent recognizes the love, devotion, and dedication of the other to the minor Children. However, the Mother shall have sole custody and sole parental responsibility until otherwise or upon application, decided by a Court of Competent jurisdiction or Agreement of the parties.

**11.1.2.** All decisions including but not limited to matters relating to health, medical, dental, selection of doctors, medical procedures, education (religious and secular), learning disabilities, behavior problems, emotional-being, moral, social, and legal matters; discipline; welfare and upbringing of the minor Children shall be made by the Mother.

**11.1.3.** The parents shall refer to each other as the Children's Mother or the Children's Father. Neither parent shall not speak negatively about the other parent, or in any derogatory manner about the other parent, in the Children's presence or where they might be overheard by the Children. Neither parent shall speak to the other in an antagonistic or criticizing manner in the Children's presence or where they might be overheard by the Children. Each parent shall be courteous and respectful to the other parent.

## 12. NAME TO BE MAINTAINED

Neither of the parents will, at any time, for any reason, cause the minor Children to be known or identified or designated by any sur name other than "HERNANDEZ-DE CASTRO" and neither shall initiate, nor cause, nor allow the designation of "Daddy", "Dad", "Papa", or "Mommy", "Mom" or "Mama" or their equivalents to be used by the minor Children with reference to any person other than the parents.

## 13. INVESTMENT ACCOUNT

The Husband opened an Investment account for the benefit of the parties minor child, GHDC, in the child's name with Cor Clearing which is now Axos Clearing. The guardian of the investment account is Gustavo Hernandez, the Husband. The parties agree that the Wife shall now become the guardian of said child's investment account. The account shall remain in the child's name and for the benefit of the child. The account is now at Axos Clearing, located at: 1200 Landmark Center, Suite 800, Omaha, NE 68102-1916, and said account shall be changed by Axos upon Order of Court.

## 14. CHILD SUPPORT

Child Support shall be waived until the Father is able to obtain employment.

## 15. CHILD DEPENDENCY EXEMPTIONS

The Wife shall be entitled to claim the 3 Children as dependents on her tax return until further Order of Court or Agreement of the parties.

## 16. EQUITABLE DISTRIBUTION OF ASSETS

The parties shall equitably distribute their assets pursuant to the following:

### 16.1. PRIMARY RESIDENCE

The parties serve as co-settlers of a trust which holds title for the property located at 597 Hibiscus Lane, Miami, FL 33137 (hereinafter "Primary Residence") in which the parties and the Children have resided. The trust is exclusively for the benefit of the Children. The Husband commits to resign as co-settlor. During the minority of the Children, the Wife shall be entitled to have sole possession of the Primary Residence legally described below:

> *Bay Point PB 40-63, Lot 5 Blk 9, Elements not dedicated to Public*
> *Folio Number: 01-3219-008-1390*

**16.1.1.** The Wife shall be entitled to the entire contents of the Primary Residence except for the Husband's personal items (clothes, shoes, etc.) The Wife assumes the responsibility for payment of the expenses thereto.

## 17. AUTOMOBILES

The Wife shall retain as her sole and exclusive property the Tesla X 2016 automobile and shall assume sole responsibility for payment of all expenses associated with the ownership and use of this automobile. The Wife hereby indemnifies and holds the Husband harmless with regard to any and all liability and obligations relating to this automobile. The Court shall order the DMV to reissue the title in the Wife's sole name.

## 18. BANK AND FINANCIAL ACCOUNTS

The Wife shall hereafter solely own all bank accounts held individually in her name.

## 19. RETIREMENT ACCOUNTS AND BROKERAGE ACCOUNTS

(1) Wife's Merrill Lynch IRA account ending in 74031 having an approximate value of $110,000 as of January 2020 subject to market fluctuations;

## 20. DEBTS OF THE PARTIES

10

**19.1** Except as set forth in this Agreement, each of the parties hereto represents that he or she will not hereafter contract any debt, charge or liability in the name or upon the credit of the other, or for which the other or the estate of the other might or could become liable and agrees, in any event, to assume responsibility for payment of any debt, charge or liability which may have not been incurred.

**19.2** The husband shall be responsible for payment of any and all credit cards, debts, and obligations not specifically required to be paid by the parties of this Agreement that are maintained in his separate name and incurred by him both before and after the date of execution of this Agreement, and he indemnifies and holds the Wife harmless against liability therefore.

**19.3** The Wife shall be responsible for payment of any and all credit cards, debts, student loans and obligations that are maintained in her separate name and incurred by her both before and after the date of execution of this Agreement, and she indemnifies and holds the Husband harmless against liability therefore.

**19.4** Each of the parties further agrees to indemnify and hold the other harmless and defend the other from and against any and all actions, causes of actions, threatened actions, judgments, damages, penalties, attorney's fees, costs, expenses, and obligations of any nature whatsoever, arising out of or directly or indirectly related to, or associated with any debts or obligations for which the Husband or Wife has assumed responsibility unless otherwise specifically provided for within the confines of this Agreement.

20. **LIFE INSURANCE**

The Husband shall maintain life insurance policies on his life for the benefit of the Children in the amount of 2.5 Million. Proof of payment each year shall be provided to the Wife on the anniversary date of the policy.

21. **DISSOLUTION ACTION**

**22.1.** In the pending dissolution action or in any action instituted in any Court by either of the parties for the dissolution of their marriage, it is the desire of both parties hereto that this Agreement and the provisions hereof be ratified and confirmed by the Court in any decree or judgment that may be entered therein, and the parties, each of them or either of them will present this Agreement to the Court and request it to be ratified, confirmed and approved and made an enforceable part of any decree, judgment or order therein entered. Neither of the parties hereto will in any way oppose ratification, confirmation, and enforcement of this Agreement and the provisions hereof by the Court in any such proceeding. The parties agree that they shall be obligated to request relief in accordance with, and limited to, the provisions hereof. Each party hereto irrevocably agrees not to make any application for any relief inconsistent with, or in excess of, the provisions of this Agreement.

**22.2.** While this Agreement shall be incorporated into, and made a part of the Final Judgment, it is specifically agreed that this Agreement shall not be merged into any Final Judgment, and that it will survive the entry of the Final Judgment as an independent contract. The terms and provisions of this Agreement shall be as fully enforceable in a court of law as a matter of contract. These remedies shall be in addition to any remedies of enforcement available to the parties under any Final Judgment entered in this case.

23. **DISPUTES AND NON-COMPLIANCE**

If either party seeks court intervention for the purpose of enforcing any part of this Agreement, the defaulting party shall be responsible for payment of the other party's reasonable attorney's fees, costs and suit monies, whether same be incurred in the trial court, post-judgment proceedings, mediation, or in any appellate court.

## 24. NO PRESUMPTIONS ARISING FROM DRAFTING

The fact that this Agreement was prepared by counsel for one of the parties shall create no presumptions and specifically shall not cause any ambiguities to be construed against that party. The parties acknowledge that each has contributed toward the contents and language of this Agreement, and that this Agreement is the result of negotiations between the parties.

## 25. SITUS

This Agreement shall be construed and governed in accordance with the laws of the State of Florida.

## 26. CAPTIONS

Paragraph captions have been used throughout this Agreement for convenience and reference only, and are not intended to and shall not be used in any manner whatsoever in the construction and interpretation of this Agreement or any provisions hereof.

## 27. FACSIMILE COPY

A facsimile copy of this document containing the facsimile copies of the Parties signatures shall constitute an original document.

IN WITNESS WHEREOF, the parties have hereunto signed their names on the day and year first hereinabove written.

_____
WITNESS

_____
OLYMPIA ALENCAR DE CASTRO

_____
WITNESS

_____
WITNESS

_____
GUSTAVO HERNANDEZ FRIERI

_____
WITNESS